sion of Baker, 129 La. 74, 55 So. 714, Ann. Cas. 1912D, 1181.

No one reading the body of Act No. 111 of 1932 can be in doubt as to its meaning. Under section 1, its provisions apply to all persons, firms, or corporations domiciled outside of the state of Louisiana. And section 2, which imposes the license tax reads: "All persons, firms, or corporations as above set forth," referring, necessarily, to nonresident persons, firms, or corporations as set forth in the previous section.

Act No. 111 of 1932 and Act No. 190 of 1932 when read together show a clear discrimination against nonresidents exclusively vending their own produce and to that extent the former statute is invalid.

For the reasons assigned, the judgment appealed from is affirmed.

I52 So. 302

**STATE v. USSERY.**

No. 32573.

Jan. 2, 1934.

John R. Hunter, of Alexandria, S. R. Holstein, of Winnsboro, and J. W. Ethridge, of Colfax, for appellant.

Gaston L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., Harry Fuller, Dist. Atty., of Winnfield, and V. M. Mouser, Asst. Dist. Atty., of Columbia (C. H. McCain, of Colfax, and James O'Niell, Sp. Asst. to Atty. Gen., of counsel), for the State.

O'NIELL, Chief Justice.

The appellant was indicted and tried for murder and convicted of manslaughter. The record contains eleven bills of exception, two of which are abandoned.

The first bill was reserved to the overruling of a motion for a continuance, based upon the absence of an alleged important witness. The reason why the judge overruled the motion was that the district attorney admitted that the witness, if present, would testify as stated in the motion. Article 325 of the Code of Criminal Procedure provides that, when either the district attorney or the defendant makes such an admission to avoid a continuance, the judge shall not grant the continuance. It is argued that the continuance should have been granted in this instance, notwithstanding the district attorney's admission, because the absent witness was the only witness to the homicide not related to either the defendant or the man who was killed. But the statute makes no exception in that respect, and we see no good reason for a departure from the rule. So long as a defendant is not denied his constitutional right to compulsory process to obtain the attendance of his witnesses, the judge is right in refusing to grant a continuance or postponement of the trial because of the absence of a witness when the district attorney admits that, if the witness were present, he would testify as stated in the defendant's motion for a continuance. In this case a subpoena was issued for the witness, and the sheriff made two trips into that part of the parish where the witness was last seen, and, after a diligent inquiry in the neighborhood, the witness could not be located. There is no assurance or showing that the attendance of the witness could have been obtained if more time had been allowed.

The second bill has reference to the method of examination by the district attorney in the impaneling of the jury. The objection made by the defendant's counsel, and overruled by the judge, was the same objection that was held to be not well founded in State v. Wells, 171 La. 795, 132 So. 349. The district attorney, having examined a prospective juror on his voir dire, tendered him to the defendant's attorneys for examina-

tion; whereupon they objected to being called upon to examine the prospective juror until the district attorney announced that he accepted the juror. The district attorney then announced that he accepted the juror tentatively, meaning that the acceptance was provisional, being subject to the provisions of articles 358 and 359 of the Code of Criminal Procedure. Article 358 provides that the jurors shall be tendered first to the prosecution for examination on their voir dire, and, if accepted, then tendered to the defense; and that, after a juror has been accepted by both sides, neither side shall have the right to challenge him peremptorily, but that it shall be then absolutely within the discretion of the judge either to allow or to deny a peremptory challenge up to the time the jury is impaneled. And article 359 provides that, after a juror has been accepted by both sides, he may yet be challenged for cause, or be excused by consent of both sides, up to the beginning of the taking of evidence. It is plain, therefore, that the tendering of a juror to the defendant's counsel, by the district attorney, after he has examined the juror on his voir dire, is in itself an acceptance of the juror by the district attorney, subject, of course, to the rights which are accorded to both sides under articles 358 and 359 of the Code of Criminal Procedure. The only way that a cause for complaint on the part of the defendant could arise in such a proceeding would be for the district attorney to attempt to withdraw his acceptance of the juror, or to proceed in a way not consistent with his acceptance of the juror, after tendering him to the defendant's counsel for examination.

■ The third bill of exception makes the complaint that, after the district attorney had examined several jurors on their voir dire and had asked each one whether he had any conscientious or religious scruples against capital punishment, and after the district attorney had challenged successfully several jurors because of their being conscientiously or religiously opposed to capital punishment, the district attorney examined and accepted a juror without asking whether he had any scruples against capital punishment. The defendant's counsel asked the judge to require the district attorney to ask either every juror or none of them to state his attitude towards capital punishment, and asked the judge to so interrogate every juror whom the district attorney refused to interrogate on that subject, if the district attorney continued to interrogate any of them on the subject. The judge refused the request. In a prosecution for a capital offense, if the district attorney does not intend to plead for an infliction of the death penalty, he ought to waive the right to exclude from the jury those who have conscientious or religious scruples against the infliction of the penalty of death; hence it is right, in such a case, for the district attorney to refrain from inquiring whether the jurors are opposed to capital punishment. It would be unfair, of course, for the district attorney to abuse his privilege in that respect, by using it as he would use a peremptory challenge, where he is not asking for the death penalty, and where, therefore, a juror's being opposed to capital punishment is not a good reason for excluding him from the jury. But, where there is no such abuse or unfair practice on

the part of the district attorney, the defendant has no cause to complain of the district attorney's failure to ask a juror whether he has any scruples against the infliction of the death penalty. State v. Davis, 154 La. 295, 97 So. 449; State v. Allen, 173 La. 482, 137 So. 860. It does not appear that there was any such unfairness in the district attorney's method of examination of the jurors in this case.

The fourth bill of exceptions has been abandoned.

■ The fifth bill was reserved to the overruling of an objection to a question which the district attorney asked a witness for the state, as to how much liquor there was under the bed or on the defendant's premises where the fatal difficulty occurred. The witness answered: "Had two half-gallon fruit jars full." The objection to the evidence was that it was irrelevant and was apt to prejudice the jury against the defendant by showing that he had violated the prohibition law. The statement per curiam shows that the evidence was relevant, because there was a contradiction between the witnesses for the state and the witnesses for the defense as to whether the defendant and his brother, who took part in the fatal difficulty, were drunk at the time of the killing. The witnesses for the state testified that the defendant and his brother were drinking very freely, and the witnesses for the defense denied it.

■■ Bills No. 6 and No. 7 were reserved to the overruling of an objection to a question which the district attorney asked two state witnesses as to whether the defendant or his brother, who had a part in the fatal difficulty, was in a bad humor because the sheriff had disarmed the defendant. The witnesses answered that the defendant and his brother were in a very bad humor a short time before the arrival of the party of three men, one of whom the defendant killed. The objection to the testimony was, first, that it was irrelevant, especially because the time was remote from the time of the killing; second, that it called for an expression of opinion on the part of the witness; and, third, that it was prejudicial in that it showed a quarrelsome character or disposition on the part of the defendant. The testimony was not irrelevant as to the time referred to, because the witnesses were speaking of a period from about an hour and a half before the difficulty until it began. The objection that the testimony was only an expression of opinion of the witness is not well founded because it does not require expert knowledge or skill to observe that a man is in a quarrelsome mood, particularly if he is very drunk, as these witnesses said the defendant was. Being relevant, the evidence was admissible, no matter how prejudicial it was. The avowed purpose of offering the evidence was to prove ill temper and malice on the part of the defendant. The evidence did not have that effect, because the jury found the defendant guilty of manslaughter, not murder.

■ The eighth bill of exception was reserved to the overruling of an objection to a question which the district attorney asked the brother of the defendant on cross-examination. The question was whether a wound on the defendant's hand was made by a shot

fired at him by his daughter the night before the killing. The objection was that the question was an attack upon the character of the defendant, whose character was not put at issue, and was prejudicial, in that it referred to a supposed difficulty between the defendant and his daughter. The witness answered: "He had a sore there on his hand, and these two cuts were fresh." The answer was not quite responsive, in that it did not refer to any previous difficulty. We infer from the question itself and from the recitals of the bill of exception that the defendant was contending that the wounds on his hand were received in the fatal difficulty; hence evidence tending to prove that the defendant received the wounds in a previous difficulty was admissible, especially on cross-examination of a defense witness, and the fact that such evidence necessarily reflected upon the character of the defendant did not render the evidence inadmissible.

The ninth bill of exception has been abandoned.

The tenth bill was reserved to a remark made by the district attorney in his closing argument to the jury. The remark was substantially that the defendant had been convicted of shooting his pistol up and down the street. It is contended by counsel for the appellant that, although he admitted, in his testimony in this case, that he had been convicted of the offense of disturbing the peace, there was no admission nor evidence that he had shot up or down the street. The judge says in his statement per curiam that the district attorney's remark to the jury was appropriate and was supported by

the evidence; and the judge adds that there was no request made to him to instruct the jury to disregard the district attorney's remark.

The eleventh bill of exceptions was reserved to the overruling of a motion for a new trial, which motion was merely a résumé of the complaints made in the bills of exception already reserved.

The conviction and sentence are affirmed.